# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

**FIRST SPECIALTY INSURANCE CORPORATION,**

    **Plaintiff,**

       v.                                                                  Case No. 05-2399-JWL

**NAIS, INC. f/k/a James W. Wolf Bonds and Insurance, Inc. d/b/a Innkeepers Agency and SCOTT A. WOLF,**

    **Defendants.**

_____

## MEMORANDUM AND ORDER

This case arises out of an agreement between plaintiff First Specialty Insurance Corporation and defendant NAIS, Inc. relating to the administration of an insurance program and a related personal guaranty by defendant Scott A. Wolf. The matter is presently before the court on Plaintiff's Motion for Summary Judgment (doc. #39). Therein, First Specialty contends that it is entitled to summary judgment on its breach of contract claim because NAIS has failed to make premium payments to First Specialty and that it is also entitled to summary judgment on its claim to enforce Mr. Wolf's personal guaranty. NAIS does not dispute that it failed to make premium payments as required under its agreement with First Specialty, and therefore the court will grant First Specialty's motion for summary judgment on the issue of liability on its breach of contract claim. The court will, however, deny the

1

motion with respect to the amount of damages on that claim, there being a genuine issue of material fact on that issue. The court will also deny the motion with respect to enforcement of Mr. Wolf's personal guaranty, there also being a genuine issue of material fact as to whether it is unenforceable because of a lack of consideration.

## STATEMENT OF MATERIAL FACTS[1]

First Specialty is an insurance company. NAIS is an insurance agency in the business of marketing, selling, underwriting, and administering insurance primarily for small inn and bed and breakfast businesses. Mr. Wolf is one of the principal owners, operators, and the president of NAIS.

On or about May 19, 2004, First Specialty entered into an "Operating Agreement" with NAIS, Inc. f/k/a James W. Wolf Bonds & Insurance, Inc. d/b/a Innkeepers Agency.[2] Pursuant to the Operating Agreement, NAIS was appointed to serve as agent for First Specialty to develop, market, sell, underwrite, and administer an insurance program for a niche known as the innkeeper industry throughout the United States under terms specified within the Operating Agreement (the "Innkeeper Program"). Pursuant to the Operating

---

[1] Consistent with the well established standard for evaluating a motion for summary judgment, the following facts are either uncontroverted or stated in the light most favorable to NAIS, the nonmoving party.

[2] On or about October 29, 2004, James W. Wolf Bonds & Insurance, Inc. changed its legal name to NAIS, Inc. The parties executed Amendment No. 2 to the Operating Agreement to incorporate the name change into the Operating Agreement for all purposes.

2

Agreement, NAIS was to develop and market the Innkeeper Program and, among other things, collect premiums from insureds. NAIS was then responsible to remit net premiums to First Specialty.

On a monthly basis beginning in July of 2004, First Specialty billed NAIS for the premium amounts due and owing to First Specialty. During the first ten months of the program, NAIS complied with paying First Specialty the premium amounts owed under the Operating Agreement. Thereafter, with the exception of sporadic payments, NAIS has not paid First Specialty the amounts due and owing under the Operating Agreement. Thus, it is uncontroverted that NAIS has breached the Operating Agreement. The parties do, however, dispute the amount due and owing to First Specialty. According to affidavits and records provided by First Specialty, NAIS is in default in an amount equaling $1,299,983. On the other hand, NAIS submitted an affidavit from Mr. Wolf in which he controverts that amount, stating the amount of net premiums NAIS still owes First Specialty is only $836,794.44.

The Operating Agreement required NAIS to establish an escrow account and it is uncontroverted that NAIS initially failed to establish that account. The nature of this account arose from NAIS's commission structure. Under the Operating Agreement, NAIS was entitled to a minimum commission of 18% of the total written premium, which NAIS was presumably entitled to retain from the remittance of premiums due to First Specialty.[3] The

---

[3] Neither of the parties submitted as a statement of fact that NAIS was entitled to retain the 18% commission, but this appears to be the case based on the formulas they used to calculate First Specialty's damages. Because this fact is helpful to an understanding of the nature of the escrow account, the court is including this fact here.

Operating Agreement also provided that, under certain circumstances, NAIS would be entitled to a provisional commission of 20% or a maximum commission of 22%. The Operating Agreement required NAIS to deposit into an escrow account the difference between the 18% minimum commission and the 20% provisional commission. NAIS did not initially establish this escrow account, but rather established it for the first time ten months into the inception of the Innkeeper Program and one day before First Specialty's audit of NAIS's books. According to Mr. Wolf, the failure to establish the account earlier was simply an oversight. A few days after NAIS's audit, the escrow account was, according to Mr. Wolf, "mistakenly" drained completely of all its assets and never replenished.

On August 31, 2005, Tina Wolff and Lee Tenold, two employees of First Specialty, came to the offices of NAIS and met with Mr. Wolf. On that day, Mr. Wolf executed Amendment No. 3 to the Operating Agreement on behalf of NAIS as president of the corporation. Amendment No. 3 required NAIS to pay First Specialty the retained commission that was supposed to have been maintained in an escrow account up to that point. Amendment No. 3 also revised the underwriting guidelines and the commission agreement, including eliminating NAIS's obligation to maintain an escrow account. Under Amendment No. 3, NAIS was to pay First Specialty the retained commission in three installments totaling $163,309.28: the first was to have been made on or before September 15, 2005; the second, on or before October 15, 2005; and the third, on or before November 15, 2005.

On that same day, Mr. Wolf also executed a personal guaranty to First Specialty that guaranteed the prompt and full payment of all premium sums owed to First Specialty pursuant to the Operating Agreement. According to Mr. Wolf, neither Tina Wolff nor Lee Tenold told Mr. Wolf before he signed Amendment No. 3 that First Specialty also wanted him to execute a personal guaranty. There was no discussion with them or anyone else with First Specialty about having Mr. Wolf execute a personal guaranty before he executed Amendment No. 3 on behalf of NAIS. According to Mr. Wolf's affidavit, he states that he executed Amendment No. 3, then either Mr. Tenold or Ms. Wolff placed that document in his or her briefcase. After that, one of them presented Mr. Wolf with a personal guaranty and stated that First Specialty would like Mr. Wolf to execute the guaranty "in light of current events." Neither of them told Mr. Wolf that First Specialty would only be willing to continue the insurance program if Mr. Wolf also executed the personal guaranty. In fact, there was no discussion concerning whether First Specialty would continue the insurance program as consideration for Mr. Wolf's execution of a personal guaranty. Additionally, neither Mr. Tenold nor Ms. Wolff stated that First Specialty would hold off on pursuing any legal remedies under the Operating Agreement if Mr. Wolf would execute a personal guaranty. There also was no discussion concerning whether First Specialty would forbear on pursuing legal remedies under the Operating Agreement as consideration for Mr. Wolf's execution of a personal guaranty.

On September 3, 2005, NAIS received two letters from First Specialty, both of which were dated September 2, 2005, cancelling the Innkeeper Program under the Operating

Agreement. In the first letter, First Specialty demanded, under the "Termination for Cause" provision of the Operating Agreement, that NAIS cure its failure to remit the full amount of premiums First Specialty claimed was due by paying $817,082.40 by October 7, 2005, or else First Specialty would terminate the Operating Agreement on October 22, 2005. The second letter stated that First Specialty was terminating the Operating Agreement pursuant to the "Termination for Convenience" provision with a termination date effective January 5, 2006.

NAIS did not make any of the three installments required under Amendment No. 3 of the Operating Agreement, the first of which was due September 15, 2005. On September 16, 2005, First Specialty filed this lawsuit.

Based on these facts, First Specialty claims it is entitled to recover on three theories: (Count I) breach of contract for failing to remit the requisite amount of insurance premiums due under the Operating Agreement; (II) breach of fiduciary duty for failing to properly collect and segregate premiums as required under the operating agreement; and (III) enforcement of Mr. Wolf's personal guaranty. First Specialty now seeks summary judgment on Counts I and III. On Count I, NAIS only disputes the amount of damages, not liability for breach of contract. On Count III, Mr. Wolf contends that the personal guaranty is not enforceable because of a lack of consideration to support the guaranty.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Spaulding v. United Transp. Union*, 279 F.3d 901, 904 (10th Cir. 2002). A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Wright ex rel. Trust Co. v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)). An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Adler*, 144 F.3d at 670 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Spaulding*, 279 F.3d at 904 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Adams v. Am. Guar. & Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000) (citing *Adler*, 144 F.3d at 671).

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Spaulding*, 279

F.3d at 904 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *see also Anderson*, 477 U.S. at 256; *Celotex*, 477 U.S. at 324. The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Anderson*, 477 U.S. at 256; *Eck v. Parke, Davis & Co.*, 256 F.3d 1013, 1017 (10th Cir. 2001). Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Mitchell v. City of Moore*, 218 F.3d 1190, 1197-98 (10th Cir. 2000) (quoting *Adler*, 144 F.3d at 671). To accomplish this, the facts "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein." *Adams,* 233 F.3d at 1246.

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut"; rather, it is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

### ANALYSIS

For the reasons explained below, the court concludes that First Specialty is entitled to summary judgment on the issue of liability on its breach of contract claim. But, as to the issues of the amount of damages on that claim as well as whether the guaranty is unenforceable for lack of consideration, defendants have demonstrated genuine issues of material fact precluding summary judgment.

**A.**     **Breach of Contract Claim**

As a threshold matter, the court grants First Specialty's motion for summary judgment as to the issue of liability on its breach of contract claim. NAIS does not dispute that it entered into the Operating Agreement, that the contract is enforceable, and that NAIS breached the agreement by failing to pay First Specialty the entire amounts due and owing under the terms of the Operating Agreement. There being no genuine issue of material fact on this issue, then, summary judgment is granted.

Summary judgment is denied, however, as to the issue of damages because a disputed issue of material fact clearly exists concerning the amount due and owing under the terms of the Operating Agreement. According to the affidavits submitted in support of First Specialty's motion for summary judgment, NAIS is in default in the amount of $1,299,983. This calculation is based on a total gross premium amount from the inception of the program until the filing of the current motion in the amount of $8,540,459. NAIS's 18% commission was $1,537,298, thus NAIS was obligated to pay First Specialty the remainder, or $7,005,991. NAIS has only paid First Specialty $5,706,006, thus placing NAIS in default in the amount of $1,299,983. In response to First Specialty's motion for summary judgment, however, NAIS submitted an affidavit from Mr. Wolf in which he controverts the amount due and owing to First Specialty. In this affidavit, Mr. Wolf states that he has calculated the amount NAIS still owes First Specialty under the Operating Agreement to be $836,794.44. He explains that the total gross premiums were $8,003,935.39, and thus (presumably less an 18% commission of $1,440,708.37) the net premium due to First Specialty was $6,563,227.02. NAIS has already paid First Specialty a total of $5,726,432.58, and therefore

the amount of net premiums NAIS still owes to First Specialty is only $836,794.44. Construing the facts in the light most favorable to NAIS, the nonmoving party, as the court must on a motion for summary judgment, a genuine issue of material fact clearly exists concerning the amount of damages on First Specialty's breach of contract claim.

In First Specialty's reply brief, it set forth additional facts upon which it relies in support of this aspect of its motion for summary judgment. The court will not, however, allow First Specialty to satisfy its summary judgment burden by relying on arguments it did not raise for the first time until its reply brief where NAIS, the nonmoving party, has not had an opportunity to respond to those arguments. *See Green v. New Mexico*, 420 F.3d 1189, 1196-97 (10th Cir. 2005) ("Generally, the nonmoving party should be given an opportunity to respond to new material raised for the first time in the movant's reply."); *Minshall v. McGraw Hill Broad. Co.*, 323 F.3d 1273, 1288 (10th Cir. 2003) (argument raised for the first time in reply brief is waived). Additionally, even considering this evidence, First Specialty still has not established it is entitled to summary judgment on the amount of damages. This evidence explains that First Specialty's calculation of the amount due is based on the accuracy of its computerized Jupiter accounting system, as verified by a manual audit of the NAIS account. Moreover, it focuses on the fact that in Mr. Wolf's second deposition in June of 2006, he admitted that First Specialty's calculation of the amount outstanding was correct "plus or minus a small percentage." The court has reviewed the relevant transcript from Mr. Wolf's deposition. The thrust of his testimony is that the discrepancy between the amounts due is attributable largely to the different accounting systems, i.e., First Specialty's Jupiter

10

system versus NAIS's agency accounting system, combined with difficulties associated with potential mistakes on thousands of policies issued. Even considering this additional evidence relied on by First Specialty for the first time in its reply brief, a genuine issue of material fact still exists concerning the amount of damages because this evidence reflects that the parties' dispute quintessentially involves discrepancies between their accounting systems.

First Specialty also points out, in its reply brief, that the pretrial order states that "Defendants are unable to dispute any amount Plaintiff is claiming." More specifically and completely, this portion of the pretrial order states as follows:

> Defendants assert the following defenses and affirmative defenses: While defendants do not deny that NAIS owes additional money to plaintiff under the Operating Agreement, *defendants dispute the amount of money that NAIS owes to plaintiff under the Operating Agreement.* Defendants are unable to dispute any amount [p]laintiff is claiming.

Pretrial Order (doc. #44), ¶ 7(a), at 4 (emphasis added). Clearly, the italicized language preserves NAIS's right to dispute the amount due. In light of the evidence First Specialty submitted for the first time in its reply brief, the court would understand this language, when read in conjunction with the last sentence, to mean that NAIS is disputing the entire calculation rather than disputing specific amounts, such as the premiums associated with particular accounts. In any event, given the clarity of the italicized language preserving defendants' dispute concerning the amount of damages, the court certainly cannot find that they have waived their right to contest the amount of damages. *Cf. Wilson v. Muckala*, 303 F.3d 1207, 1215 (10th Cir. 2002) (claims, issues, defenses, or theories of damages *not* included in the pretrial order are waived).

11

**B.      Consideration to Support the Personal Guaranty**

A guaranty, like any other contract, must be supported by consideration in order to be enforceable. *State ex rel. Ludwick v. Bryant*, 237 Kan. 47, 697 P.2d 858 (1985) (affirming trial court's judgment that there was no consideration to support execution of guaranty); *Furst & Thomas v. DeWitt*, 145 Kan. 300, 305, 65 P.2d 567, 570 (1937). Under Kansas law, "[c]onsideration is defined as some right, interest, profit, or benefit accruing to one party, or some forbearance, detriment, loss, or responsibility given, suffered, or undertaken by the other." *Varney Business Servs., Inc. v. Pottroff*, 275 Kan. 20, 32, 59 P.3d 1003, 1014 (2002) (quotation omitted). Furthermore, and crucial to the analysis here, consideration does not exist when one party makes a promise to another without anything being bargained for and given in exchange for it. *Id.* Thus, the presence of a bargained for exchange is fundamental to the idea of consideration. In Kansas, a written contract is presumed to be supported by consideration unless the lack of consideration is raised as an affirmative defense and is proved by substantial competent evidence. *State ex rel. Ludwick v. Bryant*, 237 Kan. 47, 50, 697 P.2d 858, 861 (1985). The absence of a bargain is just such evidence which could defeat the presumption. Resolution of any dispute on this point is a question of fact for the jury. *Ferraro v. Fink*, 191 Kan. 53, 56-57, 379 P.2d 266, 269 (Kan. 1963); *Puritan-Bennett Corp. v. Richter*, 8 Kan. App. 2d 311, 315, 657 P.2d 589, 592 (Kan. App. 1983).

In this case, there is a genuine issue of material fact concerning whether Mr. Wolf's personal guaranty was supported by consideration. The ultimate question here is whether there was a bargain. In the pretrial order, First Specialty contends that there was

12

consideration for the personal guaranty in the form of its forbearance of collection activities against NAIS and its agreement to continue the parties' insurance program. *See* Pretrial Order (doc. #44), ¶ 5(a), at 3. Certainly, extending the time for payment of an obligation and forbearing from engaging in collection activities generally could constitute sufficient consideration for a guaranty. *Ludwick*, 237 Kan. at 52, 697 P.2d at 862 (noting that forbearance is usually sufficient consideration unless the claim or defense is obviously invalid, worthless, or frivolous); *Ryco Packaging Corp. v. Chapelle Int'l, Ltd.*, 23 Kan. App. 2d 30, 38, 926 P.2d 669, 675 (1996). But, here, viewing the parties' submissions in the light most favorable to NAIS, the nonmoving party, a reasonable jury could find that, to the extent First Specialty extended the time for NAIS to pay its past-due obligations or agreed to forbear from collection activities, its decision to do so was independent of Mr. Wolf's personal guaranty. That is, the personal guaranty could be found to be simply a bare promise from Mr. Wolf to First Specialty without anything being bargained for or given in exchange for it, somewhat of an afterthought following the parties' agreement on Amendment No. 3.

First Specialty's argument that consideration existed in the form of First Specialty's agreement to continue the parties' insurance program is problematic for two reasons. First, under what is commonly referred to as the pre-existing duty rule, a mere agreement to continue to do business does not, in and of itself, necessarily satisfy the legal standard for consideration. The relevant inquiry would focus on the extent to which First Specialty was already bound to continue to do business with First Specialty and whether the agreement it made in exchange for the guaranty altered that legal obligation. *See Apperson v. Security*

13

*State Bank*, 215 Kan. 724, 734, 528 P.2d 1211, 1219 (1974) (noting that "an agreement to do or the doing of that which a person is already bound to do does not constitute a sufficient consideration for a new promise"); *see also* Restatement (Second) of Contracts § 73 (1981). First Specialty has not presented its argument on this issue in terms of alteration of its pre-existing legal obligations and, as such, First Specialty has failed to meet its initial summary judgment burden of demonstrating the absence of a genuine issue of material fact on this issue.  Additionally, First Specialty has not presented evidence that continuation of the business was bargained for in exchange for the guarantee.  To the extent First Specialty has referred to additional evidence on this issue for the first time in its reply brief, of course, the court would not allow First Specialty to satisfy its summary judgment burden by relying on arguments it did not raise for the first time until its reply brief.  So, whether there was a bargain on this basis remains a disputed issue for trial.

Accordingly, First Specialty's motion for summary judgment is also denied as to the issue of whether the personal guaranty by Mr. Wolf is unenforceable for lack of consideration.


**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff's Motion for Summary Judgment (doc. #39) is granted as to the issue of liability on First Specialty's breach of contract claim; the motion is otherwise denied.


**IT IS SO ORDERED** this 27th day of October, 2006.

                                              <u>s/ John W. Lungstrum</u>
                                              John W. Lungstrum
                                              United States District Judge